UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
James Anthony Josephs and       )    Case No. 04-11593C-13G
Lorena Fields Josephs,          )
                                )
          Debtors.              )
                                )

MEMORANDUM OPINION

This case came before the court on June 21, 2005, for hearing upon a motion by Camco Finance Company ("Camco") to determine priority of lien.  C. Scott Meyers appeared on behalf of Camco. Anita Jo Kinlaw Troxler appeared as Chapter 13 Trustee.  Having considered the motion, the evidence offered by Camco and matters of record in this case, the court makes the following findings of fact and conclusions of law pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

FACTS

1.   On April 28, 2004, the Debtors purchased a 2004 Dodge Ram truck from the Crown Dodge ("Crown"), an automobile dealership in Greensboro, North Carolina.  On the date of the purchase, the Debtors executed a Simple Interest Motor Vehicle Contract and Security Agreement ("contract and security agreement") and a Retail Buyers Order and Invoice.  The contract and security agreement signed by the Debtors provided a description of the 2004 Dodge Ram and granted to Crown or its assignee a security interest in the Dodge vehicle to secure the payments required under the contract

and security agreement. The Retail Buyer's Order and Invoice identified Triad Financial Corporation ("Triad") as the company that would be financing the purchase of the vehicle.

2. On April 29, 2004, Triad faxed a conditional loan approval statement to Crown indicating that the Debtors were approved for a loan in the amount of $30,699.00 subject to various conditions, including verification of the Debtors' income and employment within 30 days of the issuance of the approval.

3. Although Debtors' employment had not been verified, Crown delivered the Dodge Ram to the Debtors on April 28, 2004.

4. Crown's customary practice when arranging financing for its customers is to execute an assignment of the contract and security agreement to the lender and send the original contract and security agreement containing the assignment to the lender. Although Crown was unable to produce the Debtors' original contract and security agreement, based upon the testimony at the hearing, the court finds that a representative of Crown executed the assignment of the contract and security agreement to Triad by filling out and signing the "Assignment Without Recourse" section on the back of the original contract and security agreement and sent the original contract and security agreement to Triad on May 5, 2004.

5. The Debtors also signed a title application form on April 28, 2004, showing Triad as the lien holder on the 2004 Dodge

- 2 -

Ram.   Crown submitted this application to the North Carolina
Division of Motor Vehicles ("DMV") on May 14, 2004.  The DMV issued
a certificate of title on May 20, 2004 showing the Debtors as the
owners of the vehicle and showing Triad as lien holder and sent the
title directly to Triad.

6.   On May 21, 2004, Debtors filed their Chapter 13
bankruptcy petition.

7.   In the meantime, when Crown attempted to verify the
Debtors' employment information as required by Triad's conditional
loan approval, it was unable to do so.  As a result, Triad declined
to go forward with financing for the Debtors and forwarded to Crown
the certificate of title that it earlier had received from the DMV.
However, before doing so, Triad signed a release of lien on the
title which was done on June 11, 2004.  Although Crown was able to
produce a copy of the title that was forwarded to Crown when Triad
refused to finance a purchase by the Debtors, Crown was unable to
produce any written documentation of any assignment of the contract
and security agreement from Triad back to Crown or any assignment
of lien from Triad to Crown.

8.   After some delay, Crown proceeded to obtain financing for
the Debtors from Camco, which is identified in the motion now
before the court as being "a financing company affiliated with
Crown."  In doing so, Crown assigned the Debtors' contract and
security agreement to Camco by filling out the "Assignment Without

- 3 -

Recourse" section on the back of a carbon copy of the contract and security agreement and forwarding the copy to Camco. The precise date of this assignment was not shown by the evidence, although it apparently occurred in August of 2004, some three months after the purchase of the Dodge Ram on April 28, 2004.

9.   On August 30, 2004, a representative of Crown completed a new Lien Recording Application showing Camco was to be the lien holder on the 2004 Dodge Ram. A representative of Crown signed the application on behalf of the Debtors pursuant to a power of attorney which the Debtors had executed on April 28, 2004. Crown then submitted this application to the DMV, which issued a new certificate of title on September 14, 2004, showing the Debtors as owners and Camco as lien holder.

10.   The entire transaction involving the purported loan from Camco to the Debtors and the granting of a lien against the Dodge Ram in favor of Camco occurred post-petition, without notice to the Debtors and without authorization from the court.

ANALYSIS

11.   In the motion now before the court, Camco seeks a determination that it has a valid first lien on the 2004 Dodge Ram.[1]

---

[1]Camco and the Trustee agreed that the priority of Camco's lien could be appropriately determined by motion rather than by adversary proceeding as is generally required by Fed. R. Bankr. Proc. 7001(2).

12.  Camco first argues that Triad acquired a valid lien which it assigned to Crown and that Crown then assigned the Triad lien to Camco.  This argument is not accepted because Camco failed to establish that Triad had a perfected lien to assign and because even if Camco had been able to show that Triad acquired a lien, the evidence did not establish that there was an assignment of any lien from Triad to Crown or that Crown assigned such lien to Camco.

13.  N.C. Gen. Stat. § 25-9-203 provides that a security interest becomes enforceable against a debtor and therefore attaches when 1) value has been given, 2) the debtor has rights in the collateral, and 3) generally speaking, when the debtor has authenticated a security agreement that provides a description of the collateral.  Attachment is a prerequisite for  perfection of a security interest.  N.C. Gen. Stat. § 25-9-308(a) ("[A] security interest is perfected if it has attached and all of the applicable requirements for perfection in G.S. 25-9-310 [regarding filing] and G.S. 25-9-316 [regarding continued perfection of security interests] have been satisfied.").  It is clear from these provisions that no security interest or lien could be perfected in favor of Triad unless attachment occurred and that no such attachment could occur until value was given by Triad.  Although N.C. Gen. Stat. § 25-1-201(44)[2] provides a rather broad definition

---

[2]Section 25-1-201(44), in pertinent part, defines value as follows:

of "value," the evidence produced by Camco was insufficient to prove by a preponderance that value was ever given by Triad.  The most common manner in which a lender such as Triad gives value is by advancing loan proceeds to the automobile dealer who assigns the security interest to the lender. It is undisputed that no money was advanced in this case.  Of course, under section 25-1-201(44), it is not required that a lender such as Triad actually have advanced loan proceeds in order to have given value.  Camco apparently relies upon the provision in section 25-1-201(44) under which value may be supplied by a "binding commitment to extend credit" on the part of a lender.  Camco's reliance on this provision is misplaced because the evidence did not establish that Triad ever became bound to extend credit.  There were numerous "approval conditions" in the communication from Triad (Camco Exhibit 2) that had to be satisfied before Triad became bound to extend credit, including verification of Debtors' employment and income, which admittedly did not occur.

---

> [A] person gives 'value' for rights if the person acquires them:
> (a) In return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection; or
> (b) As security for or in total or partial satisfaction of a pre-existing claim; or
> (c) By accepting delivery pursuant to a pre-existing contract for purchase; or
> (d) Generally, in return for any consideration sufficient to support a simple contract.

Triad thus was not bound to extend credit and chose not to do so. The result was that no security interest in favor of Triad attached to the 2004 Dodge Ram and no lien in favor of Triad was ever perfected.  Triad, therefore, had no lien to assign to Crown.  The other deficiency in Camco's argument is that even if Triad acquired a lien on the Dodge Ram, Camco failed to show that Triad assigned or even attempted to assign such lien to Crown.  Instead, the evidence showed that Triad entered a lien release on the certificate of title before mailing it to Crown.  Moreover, the evidence failed to show that Crown assigned or attempted to assign a lien to Camco.  Instead, it appears from the evidence that the transaction involving Crown and Camco entailed a new loan from Camco and the creation of a new lien in favor of Camco which probably was the only available alternative following the lien release by Triad.

14.  Alternatively, Camco argues that, based upon the decision in In re White, 183 B.R. 713 (Bankr. M.D.N.C. 1995), it is "entitled to be equitably subrogated to Triad Financial's lien," which Camco asserts was perfected at the time of filing.  This argument also is based upon the hypothesis that Triad perfected a lien on the Dodge Ram and therefore suffers from the same deficiency as Camco's first argument.  However, even if Triad had acquired a lien on the Dodge Ram, the evidence presented by Camco was insufficient to establish the grounds required for equitable

subrogation to occur.

15. The general rule of equitable subrogation may be stated as follows:

> One who furnishes money for the purpose of paying off an encumbrance on real or personal property, at the instance either of the owner of the property or of the holder of the encumbrance, either on the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, will be subrogated to the rights of the prior lienholder as against the holder of an intervening lien, of which the lender was excusably ignorant.

White, 183 B.R. at 714 (quoting Peek v. Trust Co., 86 S.E.2d 745, 755 (N.C. 1955)). A party invoking the remedy of equitable subrogation must be able to establish both that the funds were advanced for the purpose of discharging the prior encumbrance and that the funds were actually applied to discharge the prior encumbrance. Id.

16. The facts of White involved a textbook application of the doctrine of equitable subrogation—a refinancing. In White, the debtor, Bryan White, financed the purchase of a truck with First Citizens Bank and Trust ("First Citizens") before the filing of his Chapter 13 petition. First Citizens acquired and perfected a lien against the vehicle. Shortly thereafter, Mr. White refinanced the truck with Telco Federal Credit Union ("Telco"). Pursuant to the terms of the refinancing, Telco wrote a check for the balance of Mr. White's loan with First Citizens, the funds were used to pay off the lien of First Citizens and First Citizens released its

- 8 -

lien.  Mr. White agreed to grant Telco a first lien on the vehicle; however, the lien application executed by Mr. White was insufficient to grant Telco a lien because Mr. White's wife, with whom he jointly owned the vehicle, did not sign the application. Mr. White filed a Chapter 13 petition and plan that proposed to treat Telco as an unsecured creditor because it did not have a valid, recorded lien on the vehicle.  Telco objected to confirmation on the grounds that it should be treated as a secured creditor under the doctrine of equitable subrogation.  The Trustee, in turn, filed a motion to avoid any lien claimed by Telco pursuant to section 544(a)(1) of the Bankruptcy Code.  This court held that the doctrine of equitable subrogation applied.  Telco had advanced funds for the purpose of discharging the lien of First Citizens and the funds advanced by Telco were actually applied to discharge that lien.  Telco had also advanced the funds with the express understanding that it would receive a first lien on the vehicle. Thus, Telco was entitled to be subrogated to the rights of First Citizens as against the Trustee, notwithstanding the fact that First Citizens had released its lien.

17.  Unlike the facts presented by the White case, the facts of this case do not satisfy the requirements of equitable subrogation.  Camco did not advance funds for the purpose of discharging a lien held by Triad or any other party; rather, Camco advanced funds for the purpose of providing the initial financing

- 9 -

for the purchase of the 2004 Dodge Ram by the Debtors from Crown.[3]
The funds advanced by Camco were not actually applied to discharge
any lien held by Triad; rather, those funds were applied to
compensate Crown on behalf of the Debtors for the purchase of the
vehicle.[4] Camco did advance funds with the express understanding
that it would receive a first lien on the Debtors' vehicle;
however, there was no showing of an understanding that this
anticipated first lien was to be received because the funds
advanced by Camco would be used to retire a lien held by Triad. In
short, the facts of this case establish no link between the funds
advanced by Camco and any perfected lien held by Triad. The
doctrine of equitable subrogation therefore does not apply and
Camco is not entitled to an equitable lien on the vehicle.

18. Pursuant to section 549(a) of the Bankruptcy Code, the
Trustee may avoid unauthorized post-petition transfers of property
of the estate.[5] The post-petition granting of a lien against

---

[3]In <u>White</u>, the fact that Telco made the check out jointly to
Mr. White and First Citizens bolstered the court's conclusion that
Telco advanced the funds for the purpose of satisfying the prior
lien. This case presents no such supporting facts.

[4]On this point, the court notes that Triad did not release its
lien because that lien was satisfied with funds received from
Camco. Triad released its lien simply because it decided not to
make the loan that would have been secured by the vehicle.

[5]Section 549(a) provides:
(a) Except as provided in subsection (b) or (c) of this
section, the trustee may avoid a transfer of property of
the estate—
      (1) that occurs after the commencement of the case;

- 10 -

property of the estate is a transfer which is avoidable under section 549 if unauthorized by the court or under the Code. Brown v. Davis (In re Davis), 240 B.R. 372, 374 (Bankr. W.D. Mo. 1999). See also City of Farmers Branch v. Pointer (In re Pointer), 952 F.2d 82, 87 n.7 (5th Cir. 1992) (reversing lower court holding that post-petition attachment of tax liens to debtor's real property constituted avoidable transfer under section 549 because appellee/creditor lacked standing to assert such a claim but noting that post-petition assertion of a lien is a transfer which is subject to avoidance by the trustee or debtor-in-possession under section 549); Brandt v. 440 Assocs. (In re Southeast Banking Corp.), 150 B.R. 833, 834 (Bankr. S.D. Fla. 1993) (holding that the post-petition recording of certain "road contribution agreements," which placed liens on debtor's property, constituted unauthorized post-petition transfers of debtor's property and the recording and resultant liens were avoidable pursuant to section 549); In re Timberline Prop. Dev., Inc., 115 B.R. 787, 791 (Bankr. D.N.J. 1990)

_____

and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.
Subsection (b) provides an exception for transfers made during the "gap period" of an involuntary case to the extent that value is given in exchange for such transfer. Subsection (c) provides an exception for transfers of real property to good faith purchasers without knowledge of the bankruptcy case and for present fair equivalent value. Neither exception applies to the instant case.

(observing that section 549 prohibits the post-petition attachment of a lien to property of the estate without court approval); Quigley v. Gen. Elec. Co. (In re Elec. City, Inc.), 43 B.R. 336, 342-43 (Bankr. W.D. Wash. 1984) (noting that post-petition assertion of a lien against property of the estate is a transfer which would be subject to avoidance under section 549 if unauthorized).

The granting to Camco of the lien against the 2004 Dodge Ram constituted a transfer of property of the estate.[6] As noted above,

---

[6]The 2004 Dodge Ram is property of the estate because it was owned by the Debtor at the commencement of the case. The substantive nature of property rights held by a bankruptcy debtor is generally defined by state law. See Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). In North Carolina, the Uniform Commercial Code controls the rights of the parties to transactions involving the sale and financing of motor vehicles. See Am. Clipper Corp. v. Howerton, 316 S.E.2d 186, 192-93 (N.C. 1984). N.C. Gen. Stat. § 25-2-401(2) governs the issue of the passage of title to goods and provides:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....

In this case, the Debtors and Crown made no other agreement with respect to the passage of title to the Dodge Ram; therefore, title to the vehicle passed to the Debtors on April 28, 2004 when Crown delivered the vehicle to the Debtors. Additionally, the DMV issued a certificate of title on May 20, 2004 showing the Debtors as the owners of the vehicle. Because the Debtors held title to the Dodge Ram when they filed their Chapter 13 petition on May 21, 2004, the Dodge Ram became property of the Debtors' bankruptcy estate pursuant to sections 541 and 1306 of the Bankruptcy Code.

this transfer occurred after the filing of the Debtors' petition and without the authorization of the court.  Therefore, the Trustee is entitled to avoid Camco's lien against the Dodge Ram as an unauthorized post-petition transfer pursuant to section 549 of the Bankruptcy Code.

CONCLUSION

19.  For the foregoing reasons, Camco is not entitled to the relief sought in its motion for a determination that it has a valid and enforceable lien against the 2004 Dodge Ram.  Accordingly, Camco's motion shall be denied.  A separate order so providing is being entered contemporaneously with the filing of this memorandum opinion pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

PARTIES TO BE SERVED


James E. Pell, Esq.
220 Commerce Place
Greensboro, NC 27401

C. Scott Meyers, Esq.
Brooks Pierce McClendon
2000 Renaissance Plaza
Greensboro, NC 27420

Anita Jo Kinlaw Troxler, Trustee